AMERICAN POSTAL WORKERS
UNION, AFL–CIO, BOSTON
METRO AREA, Plaintiff,

v.

Anthony M. FRANK, et al., Defendants.

Civ. A. No. 87–1264–Mc.

United States District Court,
D. Massachusetts.

Nov. 21, 1989.

Alan J. McDonald, James F. Lamond, Mark G. Kaplan, McDonald, Noonan and Kaplan, Newton, Mass., for plaintiff.

Robert J. Cynkar, Deputy Asst. Atty. Gen., Richard E. Greenberg, Shalom Brilliant, Brian G. Kennedy, Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER GRANTING CROSS MOTIONS FOR SUMMARY JUDGMENT IN PART

McNAUGHT, District Judge.

Plaintiff, American Postal Workers Union, AFL–CIO, Boston Metro Area (APWU), is a chartered area local of the National Union of the same name which serves as the collective bargaining representative of all persons employed in clerical, maintenance, motor vehicle and special delivery crafts by the United States Postal Service (USPS). Letter carriers are not included in the union. Defendants include the United States Postal Service.

Beginning on September 24, 1986, all applicants for career employment with the United States Postal Service at the Boston site were required to submit to a urinalysis for drug testing. According to defendants, the drug screening program was implemented solely for research purposes to evaluate the correlation between pre-employment drug testing and job performance. Applicants were not orally informed prior to arriving for their medical examination that their urine would be screened for drugs, but Postal Form 2485, sent to applicants in advance, does indicate that urine tests for drugs may be part of the examination. The urine sample was provided unobserved and in the privacy of a single-person washroom. If an applicant objected, his or her sample was discarded or returned, and the person was no longer considered for employment.

A positive result, however, did not result in the person being rejected for a position with the USPS. Rather, those candidates who became employed with the Postal Service in the Boston office after the drug screening began, regardless of test results, were monitored for job performance based on specified categories, including continued employment, absenteeism, discipline, and injuries. Supervisors were never apprised of the drug test results which were separated from the applicant's personnel file and the information was kept secured in a highly confidential computerized data bank. Only the study investigators and one data entry clerk had access to the results.

Providing urine samples during the routine pre-employment physical examination was nothing new to job applicants. Since approximately 1981, applicants for career employment with USPS have been required to submit urine samples as part of their regular pre-employment physical examination. That urine, however, was tested only for ketones, albumen, blood or sugar. Drug screening of urine was only ordered if the physical exam or medical history raised a clinical suspicion of a drug problem.

Plaintiff and defendants bring cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Both parties agree that there are no genuine issues of material facts in dispute rendering summary judgment appropriate for this matter.

The issues here are twofold. First, there is a question as to whether plaintiff has standing to bring suit where applicants for a job with the Postal Service are not yet members of the APWU. A person is only eligible to join the union *after* he or she is hired by the Postal Service. The second question is substantive. Does the requirement that job applicants submit to urinalysis drug testing violate the Fourth Amendment right to be free from unreasonable searches and seizures?

■ I will address the standing question first. Associational standing is recognized

by the Supreme Court and the First Circuit Court of Appeals. *International Workers of America v. Brock*, 477 U.S. 274, 282–286, 106 S.Ct. 2523, 2528–2531, 91 L.Ed.2d 228 (1986). *Camel Hair and Cashmere Institute of America v. Associated Dry Goods Corporation*, 799 F.2d 6, 10–11 (1st Cir.1986). The APWU has standing to sue if: 1) its members would otherwise have standing to sue in their own right; 2) the interests the union seeks to protect are germane to the organization's purposes; and 3) neither the claim asserted nor the relief requested require the participation of individual members in the lawsuit. *Id.* at 10, citing *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

I am persuaded that plaintiff has met each of the three criteria and thus has standing to bring this action. There is no question that union members could bring suit on their own if they so desired. In addition, the union's charter establishes that one of its purposes is to engage in activities which improve the general economic and social conditions in this country. The charter specifically provides that the union will: "engage in legislative, political, education, civic, welfare and other activities which further, directly or indirectly, the joint interest of the membership of this union in the improvement of general economic and social conditions in the United States of America". I think the Fourth Amendment question raised by plaintiff is sufficiently germane to the union's purposes to meet the second criterion. Finally, participation of individual members is not required. Therefore, I conclude that plaintiff has standing to bring this action.

■■■ This brings me to the substantive issue. Urine tests, when compelled by the government, are searches and seizures within the meaning of the Fourth Amendment. *Skinner v. Railway Labor Executives' Association*, 489 U.S. ——, ——, 109 S.Ct. 1402, 1412–13, 103 L.Ed.2d 639 (1989). *National Treasury Employees Union v. Von Raab*, 489 U.S. ——, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989). The Fourth Amendment protects persons from unreasonable searches and seizures. The question, therefore, is whether the across-the-board urinalysis drug screening of applicants for career jobs with the United States Postal Service is reasonable. Searches are generally unreasonable when conducted without a warrant or without probable cause in those circumstances where an exception to the warrant requirement exists. Although the Supreme Court has stated that warrants, probable cause and individualized suspicion are not "indispensable component[s] of reasonableness in every circumstance ...," I find that the situation presented here does require some degree of individualized suspicion to comport with the Fourth Amendment. See *Von Raab*, 489 U.S. at ——, 109 S.Ct. at 1390.

The Supreme Court recently announced the principle that where the "Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement", a court must "balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion ..." *Von Raab*, 489 U.S. at ——, 109 S.Ct. at 1390. In *Von Raab* and *Skinner*, both decided the same day, the Supreme Court tipped the balance in favor of the government upholding the constitutionality of urinalysis drug testing for certain government employees without individualized suspicion, a warrant, or probable cause. *Von Raab*, 489 U.S. at ——, 109 S.Ct. at 1396. *Skinner*, 489 U.S. at ——, 109 S.Ct. at 1421. In *Skinner*, the Court upheld regulations allowing random drug testing through urinalysis for railroad workers involved in safety-sensitive positions. *Skinner*, 489 U.S. at ——, 109 S.Ct. at 1421–22. In *Von Raab*, the Court held that United States Customs agents who apply for promotions to positions which involve carrying firearms or direct involvement in drug interdiction may be required to submit to urinalysis drug testing without individualized suspicion. *Von Raab*, 489 U.S. at ——, 109 S.Ct. at 1397.

The Supreme Court predicated both *Skinner* and *Von Raab* on the govern-

**90**

ment's compelling need to protect public safety within the highly regulated industry of railroads, and to maintain the integrity of the United States Customs Service.

■ That is not the case here. The United States Postal Service is not a highly regulated industry like the railroads. We are not dealing here with the compelling need to provide safe public transportation. Major accidents with high fatalities just do not occur within the Postal Service. Although some of plaintiff union members do operate special delivery crafts, and others maintain vehicles which requires precision and alertness, the government does not set forth a good enough reason to intrude upon each applicant's privacy interests. APWU workers are not required to carry firearms, nor are they involved in drug interdiction. Furthermore, a review of the law, albeit scanty, on the distinction between prospective employees and current employees does not convince me that job applicants should be accorded lesser Fourth Amendment protections. In addition, urinalysis drug screening when part of a medical examination is not doctrinally distinct from a compelled urinalysis. In sum, I simply cannot extend the breadth of the recent Supreme Court decisions to persons seeking employment in an industry such as the Postal Service for the sake of research.

This is not to say that empirical data on the effects of drugs in the workplace is unimportant. Nonetheless, where the integrity of the efficient operation of the Postal Service is not presently at stake, and where the safety of postal workers is minimal compared to the need to protect customs agents and the public, I conclude that the required urinalysis drug testing for all job applicants to the United States Postal Service without individualized suspicion is an unreasonable intrusion into the privacy of applicants and thus, a violation of the Fourth Amendment.

■ Plaintiff also asks this Court to order the expungement of all the drug test results heretofore reported. Again, a balancing test is required. I examine what harm an individual will incur from the existence of the record against the utility to the government of the record's maintenance. *Paton v. La Prade*, 524 F.2d 862, 868 (3rd Cir.1975). On this issue, although the information may have been obtained unconstitutionally, the balancing test weighs in favor of defendant. I foresee no harm to any individual in the future. The harmful invasion of privacy lies in the past. On the other hand information has value in and of itself. The results of the study may benefit the public by providing "indicators" of relationships between the use of specific drugs and job performance, for one example.

Plaintiff's motion to strike certain portions of two declarations submitted in support of defendants' motion for summary judgment is denied.

SO ORDERED.