**AMERICAN POSTAL WORKERS UNION, et al., Plaintiffs, Appellants,**

v.

**Anthony M. FRANK, et al., Defendants, Appellees.**

No. 91–1633.

United States Court of Appeals, First Circuit.

Heard April 9, 1992.

Decided July 6, 1992.

See also 734 F.Supp. 40.

James F. Lamond, Newton, Mass., for plaintiffs, appellants.

Robert V. Zener, Appellate Litigation Counsel, with whom Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Wayne A. Budd, United States Attorney, Boston, Mass., R. Andrew German, Asst. Gen. Counsel, and Suzanne Hassell Milton,

Washington, D.C., were on brief for defendants, appellees.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and YOUNG,[*] District Judge.

FRANK M. COFFIN, Senior Circuit Judge.

The American Postal Workers Union seeks declaratory and injunctive relief requiring the United States Postal Service to stop mandatory drug testing of applicants for employment.[1] Because we find that the Union lacks standing, we are constrained to dismiss this case without reaching the sensitive constitutional issue at the heart of the litigation.

## I. *Background*

This lawsuit challenges, as violative of Fourth Amendment privacy rights, the Postal Service's policy of requiring job applicants to submit to urinalysis drug testing. The Union represents individuals who presently are postal service employees. Some of those employees underwent drug testing before they were hired, but this lawsuit does not request damages for the asserted violation of their rights. Rather, the Union seeks a declaration that the policy is unconstitutional, and an injunction barring future testing of applicants. The Union thus pursues remedies that will benefit only would-be Union members.

The district court, in a ruling from the bench, granted summary judgment for the Postal Service. Although the court referred to "a problem with standing," it nevertheless reached the merits to conclude that the balance of interests weighed in favor of the Postal Service's need to exclude drug-using individuals from employment. Accordingly, the court held that the Postal Service's pre-employment drug testing is a reasonable search under the Fourth Amendment. *See* Tr. of Hearing, April 22, 1991, at 13.

---

[*] Of the District of Massachusetts, sitting by designation.

1. Both the national union and the Boston area local are plaintiffs. For the sake of simplicity,

## II. *Discussion*

### A. Principles of Standing

*Case or Controversy*

■ Article III of the Constitution confines federal courts to deciding only actual cases and controversies. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). This limitation on federal jurisdiction underlies the standing doctrine, which is designed to assure that issues are presented to the court "in the context of a specific live grievance," *Golden v. Zwickler*, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). Standing is thus a threshold question in every federal case, requiring the court to determine "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (emphasis in original) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).

The standing inquiry has three elements. A litigant must [1] " 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant' and [2] that the injury 'fairly can be traced to the challenged action' and [3] 'is likely to be redressed by a favorable decision.' " *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (footnote and citations omitted). *See also County of Riverside v. McLaughlin*, —— U.S. ——, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991); *Allen v. Wright*, 468 U.S. at 751, 104 S.Ct. at 3324; *Playboy Enterprises, Inc. v. Public Service Comm'n*, 906 F.2d 25, 36 (1st Cir. 1990).

■ The personal injury prong of the inquiry has triggered the most Supreme

we refer to them collectively throughout the opinion as "the Union."

Court scrutiny and a substantial body of precedent devoted to defining the nature of the requisite harm. *United States v. AVX Corp.,* 962 F.2d 108, 113–14 (1st Cir.1992), (citing cases). The alleged injury, for example, must be real and immediate rather than abstract or conjectural. *Id.* A mere interest in a situation—no matter how deeply felt, or how important the issue—will not substitute for actual injury. *Id.* The Court has noted that

> the decision to seek review must be placed "in the hands of those who have a direct stake in the outcome." *Sierra Club v. Morton,* 405 U.S. 727, 740 [92 S.Ct. 1361, 1369, 31 L.Ed.2d 636] (1972). It is not to be placed in the hands of "concerned bystanders," who will use it simply as a "vehicle for the vindication of value interests." *United States v. SCRAP,* 412 U.S. 669, 687 [93 S.Ct. 2405, 2416, 37 L.Ed.2d 254] (1973).

*Diamond v. Charles,* 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986).

The less visited second and third components of the standing inquiry—"traceability" and "redressability"—denote two forms of causation. "[T]he former examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas the latter examines the causal connection between the alleged injury and the judicial relief requested." *Allen v. Wright,* 468 U.S. at 753 n. 19, 104 S.Ct. at 3325 n. 19. *See also Haitian Refugee Center v. Gracey,* 809 F.2d 794, 798–99 (D.C.Cir.1987).

When a litigant has met all three requirements, it can fairly be assumed that a case or controversy has been established, and that "the particular plaintiff is entitled to an adjudication of the particular claims asserted," *Allen v. Wright,* 468 U.S. at 752, 104 S.Ct. at 3325.

*Associational Standing*

■ The Union does not contend that it has suffered any "personal" injury from the drug testing. Instead, it invokes the doctrine of "associational," or "representational," standing, which permits organizations, in certain circumstances, to premise standing entirely upon injuries suffered by their members. *UAW v. Brock,* 477 U.S. 274, 281–82, 106 S.Ct. 2523, 2528–29, 91 L.Ed.2d 228 (1986); *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977); *Warth v. Seldin,* 422 U.S. at 511, 95 S.Ct. at 2211; *AVX,* 962 F.2d at 116. This doctrine does not eliminate the constitutional requirement of a live case or controversy between the parties, but it recognizes that injury to an organization's members may satisfy Article III and allow the organization to litigate in federal court on their behalf. *Brock,* 477 U.S. at 281, 106 S.Ct. at 2528.

■ The test for associational standing is—like the basic standing inquiry—tripartite. The plaintiff association must show that (a) at least one of its members possesses standing to sue in his or her own right—i.e., that the member can satisfy the three requirements of injury, traceability and redressability; (b) the interests the suit seeks to vindicate are germane to its purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Brock,* 477 U.S. at 282, 106 S.Ct. at 2528; *Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441; *AVX,* 962 F.2d at 116.

To establish its right to bring the instant action, the Union must demonstrate compliance with these prerequisites. As we discuss in Section B below, it cannot do so. Because the Union members are unable to meet the redressability prong of the basic standing inquiry, they lack standing. As a result, the Union is unable to fulfill the first condition for associational standing—that at least one member possess standing to sue as an individual. In light of this deficiency, we do not consider whether the Union could satisfy the other two prongs of the associational standing test.[2]

---

2. The district court probably was skeptical about the Union's ability to meet the second prong of the associational standing inquiry, requiring it to demonstrate that the interests at issue in the suit are germane to its purpose. This concern arose after the National Labor Relations Board ruled that the Union "waived any right of collective bargaining over the issue

### B. Union Members' Standing

If the question at this juncture were simply whether any of the Union's members could allege harm from the disputed policy, we might well resolve the standing issue in its favor. Among the Union's present membership are individuals who submitted to the drug test. These members have a concrete claim of injury—that they were subjected to an unreasonable search in violation of the Fourth Amendment.[3]

■ Supreme Court caselaw teaches, however, that while the past injury suffered by these members would give them standing to bring actions for damages, it is an insufficient predicate for equitable relief. In *Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983), the Court reaffirmed the principle that past exposure to harm will not, in and of itself, confer standing upon a litigant to obtain equitable relief "[a]bsent a sufficient likelihood that he will again be wronged in a similar way." *See also Lujan v. Defenders of Wildlife*, — U.S. —, —, 112 S.Ct. 2130, 2138, 119 L.Ed.2d 351 (1992); *Rizzo v. Goode*, 423 U.S. 362, 371–73, 96 S.Ct. 598, 604–05, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974).

The plaintiff in *Lyons* alleged that police officers who stopped him for a traffic violation unconstitutionally applied a chokehold that rendered him unconscious and damaged his larynx. He sued the City of Los Angeles and four officers, and obtained a preliminary injunction barring use of the procedure except when death or serious bodily injury was threatened.

The Supreme Court reversed. It found that Lyons "has failed to demonstrate a case or controversy with the City that would justify the equitable relief sought,"

461 U.S. at 105, 103 S.Ct. at 1667. Lyons's standing to seek such relief, the Court held, depended upon whether "he is realistically threatened by a repetition of his experience of October 1976," 461 U.S. at 109, 103 S.Ct. at 1669. *See also id.* at 105, 103 S.Ct. at 1667.

> That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id.*

In other words, because Lyons could not show that an injunction barring future use of the chokehold would provide relief to him, personally, he had no standing to seek that remedy. The Court deemed far too speculative the possibility that Lyons would have another encounter with the police that would result in an illegal application of the chokehold. And the allegation in his complaint that Los Angeles police officers routinely apply the chokehold unconstitutionally was insufficient "to establish a case or controversy *between these parties*," *id.* at 105, 103 S.Ct. at 1667 (emphasis added).

The *Lyons* holding derives from the third prong of the standing inquiry, conditioning justiciability on whether the plaintiff's injury is likely to be redressed by the requested relief. It is based on the obvious proposition that a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.

The relationship in this case between asserted injury and requested remedy is in-

---

of applicant drug testing," *American Postal Workers Union v. Frank,* 734 F.Supp. 40, 41 (D.Mass.1990) (McNaught, J.), suggesting that such testing was not sufficiently central to its purpose to satisfy the associational standing doctrine. The court previously had held that the Union satisfied the first prong of the inquiry, stating that "[t]here is no question that union members could bring suit on their own if they so desired," *American Postal Workers Union v. Frank,* 725 F.Supp. 87, 89 (D.Mass.1989) (McNaught, J.).

**3.** We express no opinion on the viability of any such claim, if brought.

distinguishable from that in *Lyons*. Because the drug testing policy is applied only to job applicants, no Union member faces a realistic risk of future exposure to it. Consequently, the declaratory and injunctive relief sought by the Union will not alleviate its members' injuries. Like Lyons, the Union members have live claims for damages. The presence of viable damages claims, however, does not establish a "present case or controversy regarding [equitable] relief," *O'Shea*, 414 U.S. at 495–96, 94 S.Ct. at 676. For such relief, therefore, the Union's members, and thus the Union, lack standing. *Cf. Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir.1992) (en banc).[4]

The Union argues that this case differs in a significant respect from *Lyons* and other cases in which plaintiffs sought equitable relief based on past injury. The focus in those cases, according to the Union, was on the unlikely recurrence of the challenged conduct. Here, however, because the Postal Service continues to perform pre-employment drug testing on a daily basis, there is "a very real and substantial conflict for which the issuance of declaratory relief would be particularly appropriate." Reply Brief at 5.

■ The factual distinction drawn by the Union is accurate. In none of the Supreme Court cases addressing the question of standing to obtain equitable relief was the challenged practice a routine, daily procedure implemented as a matter of policy by the defendants. Neither the unprovoked use of chokeholds at issue in *Lyons*, the prisoner transfer in *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975), the police treatment in *Rizzo*, nor the criminal justice procedures in *O'Shea*

was explicitly implemented as standard operating procedure by the defendants.

This distinction is not, however, pertinent. Indeed, the Court in *Lyons* rejected a similar attempt to distinguish that case from the precedent of *O'Shea* and *Rizzo*, where equitable relief had been denied because the prospect of future injury to plaintiffs was too speculative. The appeals court in *Lyons* had deemed the *O'Shea–Rizzo* cases inapposite to the issue before it because it viewed them as involving "massive structural" relief against local law enforcement systems while Lyons sought only to enjoin an "established," "sanctioned" police practice. 461 U.S. at 108, 103 S.Ct. at 1668. The Supreme Court was unpersuaded by the circuit court's reasoning, and ruled that *O'Shea* and *Rizzo* "cannot be so easily confined to their facts," *id.* at 108–09, 103 S.Ct. at 1668–69. If Lyons is unable to show a realistic threat of repetition of his experience, the Court held, then he has failed to establish standing for seeking an injunction in federal court, "whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice." *Id.* at 109, 103 S.Ct. at 1669.[5]

That the Postal Service consistently imposes the drug test on applicants demonstrates that a live dispute exists, but it does not demonstrate that the Union has a direct stake in that dispute. The Union does not explain how its members—all of whom, by definition, are postal service employees, rather than applicants—are hurt by the continuing use of the test on non-member job applicants. Nothing in the relevant caselaw suggests that guaranteed repetition of the injury to *someone* lessens the need for a particularized dispute between the plaintiff and defendant.

---

**4.** Although the emphasis in *Lyons*, *O'Shea* and *Rizzo* was on injunctive relief, the same principles apply with respect to declaratory judgments, which are authorized only "[i]n a case of actual controversy," 28 U.S.C. § 2201. *See Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969).

**5.** We similarly find unavailing another distinction between this case and *Lyons*. In *Lyons*, and in the precedent upon which it relied, plaintiffs sought federal intervention into state police

practices or other state institutions. This prompted the Court to invoke principles of comity and federalism in support of its decisions against federal jurisdiction. *See Lyons*, 461 U.S. at 112, 103 S.Ct. at 1670. While the issue here may be more appropriate for federal court, federal court is nevertheless "not the proper forum to press such claims unless the requirements for entry ... are satisfied," *id.* at 112, 103 S.Ct. at 1670.

We recognize that the Union has a serious claim of constitutional magnitude. Even an important substantive issue cannot be brought to federal court, however, if a plaintiff fails to satisfy Article III's requirements. *See Separationists*, 959 F.2d at 1286 ("We must not shrink from our duty to decide a controversy, but that duty includes faithful obedience to the limits of our mandate.") While the concept of standing defies precise definition or mechanical application, *AVX*, 962 F.2d at 113; *Allen v. Wright*, 468 U.S. at 751, 104 S.Ct. at 3324, the Court made it quite clear in *Lyons* that the baseline requirements are unyielding. A plaintiff must demonstrate a concrete injury caused by the defendant and remediable by the requested relief to satisfy Article III. Measuring the facts of this case against those well-established foundational criteria requires us to conclude that the Union lacks standing.

*Accordingly, the judgment of the district court granting summary judgment for defendants is vacated, and the cause is remanded with instructions to dismiss the complaint for lack of jurisdiction. Costs to appellees.*