### Scott M. FROTTON, Amy O'Beirne, Plaintiffs,

v.

**Irwin J. BARKAN, Trustee 1900 Main Street Realty Trust, DeMoulas Supermarkets, Inc., David K. Wanger, Trustee, Dudley Trading Associates Nominee Trust, Defendants.**

No. CIV.A.2001–12124–RBC[1].

United States District Court, D. Massachusetts.

Dec. 19, 2002.

Nicholas S. Guerrera, Lorraine Mojica, Shaheen Guerrera & O'Leary, LLC, North Andover, MA, for Plaintiffs.

Jeffrey C. McLucas, Michael A. West, McLucas & West, P.C., Boston, MA, for Defendants.

David C. Aisenberg, Looney, Cohen, Reagan & Aisenberg, Boston, MA, for Interested Party.

---

1. With the parties' consent this case has been referred and reassigned to the undersigned for all purposes including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c).

*MEMORANDUM AND ORDER ON PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION TO REQUIRE DEMOULAS SUPERMARKETS, INC. TO MAKE THE OAKDALE MALL READILY ACCESSIBLE TO AND USABLE BY DISABLED INDIVIDUALS (# 59)*

COLLINGS, United States Magistrate Judge.

## I. Introduction

Plaintiffs Scott M. Frotton ("Frotton") and Amy O'Beirne ("O'Beirne") have filed a second amended complaint alleging, inter alia, that defendant DeMoulas Supermarkets, Inc. ("DeMoulas"), the owner of a shopping plaza in Tewksbury, Massachusetts known as the Oakdale Mall and the Market Basket supermarket located therein,[2] has violated the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., in various respects. Presently before the Court is the plaintiffs' application for a preliminary injunction which essentially seeks the ultimate relief requested in the lawsuit: that DeMoulas be enjoined to alter the interior and exterior of the Oakdale Mall and the Market Basket store to bring them into compliance with the requirements of the ADA and the regulations promulgated thereunder.[3] Frotton and O'Beirne have filed a memorandum of law in support of their application as well as numerous exhibits. (# 21) DeMoulas has filed an opposition to the preliminary injunction application together with fourteen exhibits. (# 57) In response to a Procedural Order (# 65) issued by the Court on November 26, 2002, both the plaintiffs and the defendant have submitted further memoranda of law (# 70,) on the issue of the meaning of "irreparable harm" in the ADA context. With the record now complete, the application for a preliminary injunction is in a posture to be addressed.

## II. The Law

The First Circuit has reiterated the familiar standard to be applied when considering the propriety of issuing a preliminary injunction:

2. For present purposes only, DeMoulas admits that it is the owner and operator of the subject supermarket and the common areas of the Oakdale Mall, but denies that it operates, manages or controls the Hallmark Store or the Papa Gino's restaurant at the Oakdale Mall. (# 57 at 12–3 and Exh. K ¶ 3) In support of its position the defendant has submitted the leases for the latter two establishments which indicate that the interior spaces of the Hallmark Store and the Papa Gino's restaurant are under the exclusive control of their owners and operators with DeMoulas remaining responsible only for certain structural aspects of the premises such as the foundation, roof, etc. (# 57, Exh. K, L, M) Frotton and O'Beirne have offered nothing to contradict or impugn the defendant's showing. Moreover, there are no allegations with respect to these two establishments in the second amended complaint whatsoever. In these circumstances, all contentions regarding the Hallmark Store and the Papa Gino's restaurant in the Oakdale Mall included within the plaintiffs' supporting papers shall be disregarded as the plaintiffs have failed to show a likelihood of success of holding DeMoulas liable for any ADA violations within the interiors of those two establishments.

3. In their prayers for relief in their second amended complaint, Frotton and O'Beirne request that the Court

    \*    \*    \*    \*    \*    \*

(b) Issue an injunction, as authorized by 42 U.S.C. § 12188(a)(2), enjoining Defendants, and each of them, from continuing their unlawful discrimination against persons with disabilities;

(c) Order the Defendants to alter the premises known as the subject Market Basket stores...[and] the Oakdale Mall...to make such facilities readily accessible to and useable by individuals with disabilities to the extent required by the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36.

Second Amended Complaint # 24 at 15.

A trial court's decision to issue a preliminary injunction in an ADA case, as in all cases, must be based on four factors: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) whether the balancing of hardships favors the issuance of the injunction; and (4) what effect, if any, the issuance or non-issuance of the injunction will have on the public interest. *See EEOC v. Astra USA, Inc.,* 94 F.3d 738, 742 (1st Cir. 1996) (Title VII); *Gately v. Massachusetts,* 2 F.3d 1221, 1224 (1st Cir.1993) (ADEA).

*Bercovitch v. Baldwin School, Inc.,* 133 F.3d 141, 151 (1st Cir.1998); *see also New Comm Wireless Services, Inc. v. SprintCom, Inc., et al.,* 287 F.3d 1, 8–9 (1st Cir.2002) ("Whether or not to issue a preliminary injunction depends upon four factors: (1) the movant's probability of success on the merits, (2) the likelihood of irreparable harm absent preliminary injunctive relief, (3) a comparison between the harm to the movant if no injunction issues and the harm to the objectors if one does issue, and (4) how the granting or denial of an injunction will interact with the public interest.")

The defendant has challenged the plaintiffs' application for a preliminary injunction on numerous fronts, but the place to begin is with the threshold issue of standing.

As explained by the Supreme Court:

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, *see id.,* at 756, 104 S.Ct., at 3327; *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 740–741, n. 16, 92 S.Ct. 1361, 1368–1369, n. 16, 31 L.Ed.2d 636 (1972); and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " Whitmore, supra, 495 U.S., at 155, 110 S.Ct., at 1723 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.,* at 38, 43, 96 S.Ct., at 1924, 1926.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (footnote omitted); *see also Friends of The Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.,* 528 U.S. 167, 180–1, 120 S.Ct. 693, 145 L.Ed.2d 610 (1992); *Larson v. Valente,* 456 U.S. 228, 238–9, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982); *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer,* 226 F.3d 15, 24 (1 Cir., 2000); *American Postal Workers Union v. Frank,* 968 F.2d 1373, 1374 (1 Cir., 1992).

As the parties asserting that there is a "case and controversy" over which this Court may properly exert jurisdiction, it is incumbent upon Frotton and O'Beirne to prove these three fundamental elements. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130; *Blake v. Southcoast Health System, Inc.,* 145 F.Supp.2d 126, 132 (D.Mass., 2001). Moreover,

Since they are not mere pleading requirements but rather an indispensable

part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (citations omitted).

Thus, in the present context, the plaintiffs must establish the probability that they will succeed on the merits in proving that they have standing to bring the claims alleged in the second amended complaint against DeMoulas. More specifically, as limned by one court,

> To show an injury in fact, in the context of injunctive relief, plaintiffs must show an actual impending threat of harm. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101–05, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). When the unlawful conduct alleged in the complaint is continuing, the court must evaluate the likelihood that the conduct will harm plaintiffs or that the plaintiffs' apprehension about harm is reasonable. *See Laidlaw,* 528 U.S. at 184, 120 S.Ct. 693. In the context of an ADA claim, plaintiffs "must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers." *Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir.2000); *see also Dudley v. Hannaford Bros. Co.,* 146 F.Supp.2d 82, 85–86 (D.Me.2001); *Blake*

*v. Southcoast Health Sys.,* 145 F.Supp.2d 126, 132–35 (D.Mass.2001).

*Access 123, Inc. v. Markey's Lobster Pool, Inc.,* 2001 WL 920051, *2 (D.N.H.); *Blake,* 145 F.Supp.2d at 132–33 and n. 11 ("[E]very court to have considered the standing requirements under Title III of the ADA has held that in order for a private litigant to prove standing, she must show a risk of future harm.")

With this legal framework in mind, an examination of the current record evidence is in order.

### III. Discussion

In the second amended complaint, Frotton and O'Beirne allege that they are persons with mobility disabilities who either always or frequently use wheelchairs for ambulation. (# 24 ¶¶ 2, 3) Each of the plaintiffs claim to be a qualified individual with disabilities under the ADA. (# 24 ¶¶ 2, 3 [4]) Both contend that they shop at the Market Basket located at the Oakdale Mall, public accommodations that are subject to the provisions of Title III of the ADA. (# 24 ¶¶ 8,40) In particular it is alleged that "[w]ithin one year before the filing of this complaint, Plaintiffs, each of whom use a wheelchair for mobility, separately visited the Oakdale Mall and the Market Basket store therein on more than one occasion and they intend to return." (# 24 ¶ 45)

---

4. For present purposes, having received a medical report documenting Frotton's paraplegia, "DeMoulas concedes that Scott Frotton is a qualified person with a disability under the ADA." (# 57 at 13) However DeMoulas challenges O'Beirne's contention that she is a qualified person with a disability under the ADA basically due to the lack of evidence proffered with respect to her purported disability apart from her statement in her affidavit that she has had rheumatoid arthritis since childhood which impairs her ability to walk. (# 57 at 13–4; # 21, Exh. B

¶ 2) O'Beirne herself states in answer to an interrogatory only that "[i]t is **my understanding** that my condition substantially limits one or more of my major life activities." (# 57, Exh. E, Answer No. 2 (emphasis added)) The defendant's point is well-taken as there is a dearth of evidence in the record substantiating O'Beirne's alleged disability, i.e., "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *See* 42 U.S.C. § 12102(2)(A).

The plaintiffs allege a litany of ways in which the ADA purportedly has been violated at these locations: the parking lot at the Oakdale Mall is deficient in that it lacks the requisite number of accessible spaces as well as accessible spaces of the required width (# 24 ¶ 46), it lacks van accessible parking spaces (# 24 ¶ 47) and it lacks readable signage (# 24 ¶ 48); there is a lack of at least one accessible route within the boundary of the Oakdale Mall from public transportation stops and/or public streets and sidewalks to a building entrance that is accessible (# 24 ¶ 49); the aisles in the Market Basket supermarket are not the prescribed three feet in width (# 24 ¶ 50); there is no accessible check-out aisle in the Market Basket supermarket (# 24 ¶ 51); and there are no accessible rest rooms in the Market Basket supermarket. (# 24 ¶ 52) Frotton and O'Beirne assert that DeMoulas has failed to remove the barriers to accessibility to the extent readily achievable and has failed to comply with accessibility standards to the maximum extent feasible and so has violated and continues to violate the ADA. (# 24 ¶¶ 55–58)

The affidavits filed by the plaintiffs in support of their application for a preliminary injunction are general in nature and essentially recap the allegations of the second amended complaint. The affidavits shall be quoted at length in order to underscore generic quality of the asseverations. First, the pertinent excerpts from the Frotton affidavit are as follows:

2. ...I always use a wheelchair for ambulation. I own and drive a truck equipped with hand controls and rigged with a hoist that allows me to take my wheelchair out of the bed of the truck and put it back in when I have finished using it.
3. Within a year of the filing of this civil action, I patronized the Oakdale Mall and the Market Basket store there on more than one occasion.
4. Upon my visits to the defendant's premises, I encountered barriers to access, including a lack of an accessible route throughout the Oakdale Mall, a shortage of disabled parking spaces, a lack of sales counters low enough to be utilized by a person in a wheelchair, and a lack of handicapped accessible rest rooms.
5. I wish to return to the defendant's premises and patronize the stores there when the barriers to access by disabled persons are eliminated.

Memorandum in Support # 21, Exh. A ¶¶ 2–5.

The averments in the O'Beirne affidavit are strikingly similar:

2. I have rheumatoid arthritis, which impairs my ability to walk....I frequently use a wheelchair for ambulation.
3. Within a year of this civil action, I patronized the Oakdale Mall and the Market Basket store there on more than one occasion.
4. Upon my visits to the defendant's premises, I encountered barriers to access, including a lack of an accessible route throughout the Oakdale Mall, a shortage of disabled parking spaces, a lack of sales counters low enough to be utilized by a person in a wheelchair, and a lack of handicapped accessible rest rooms.
5. I wish to return to the defendant's premises and patronize the stores there when the barriers to access by disabled persons are eliminated.

Memorandum in Support # 21, Exh. B ¶¶ 2–5.

The plaintiffs' answers to interrogatories add little in the way of detail or specifics to their affidavits. A few examples will suffice to make the point. For instance, when

stating the basis for his claim that DeMoulas discriminated against him in violation of the ADA, Frotton responded:

> As a person who uses a wheelchair all the time, I have experienced serious difficulty in parking my truck at the Oakdale Mall and in getting into and around Market Basket. The Defendants have discriminated against me and others similarly situated and continue to discriminate against me and others similarly situated by failing to remove access barriers which exist on their property, a place of public accommodation, and which deny me and others similarly situated equal access and full enjoyment of their goods and services on an equal basis as non-disabled individuals. Discovery is ongoing and the Plaintiff reserves the right to supplement this answer.

Defendant, DeMoulas Supermarkets, Inc., Opposition #57, Exh. I Answer No. 3.

When asked to "state the basis" for his claim that DeMoulas "failed to remove architectural barriers on the property pursuant to the ADA", Frotton answered:

> I believe that I have encountered architectural and access barriers in violation of the ADA at the Defendants' property. The existence of those architectural and access barriers when I visited the property indicates to me that the Defendants failed to remove them in a readily achievable manner as required by the ADA. Discovery is ongoing and the Plaintiff reserves the right to supplement this answer.

Defendant, DeMoulas Supermarkets, Inc., Opposition #57, Exh. I Answer No. 5.

In answer to an interrogatory requesting that he "state the basis" for his claim that DeMoulas failed to remove barriers to access, Frotton stated:

> I encountered numerous access barriers for persons with mobile disabilities

at the Oakdale Mall on the many occasions when I visited the property. I am informed that the parking lot of the Oakdale Mall lacked the required minimum number of accessible spaces; it lacked accessible spaces of the required width; it lacked van accessible spaces and lacked at least one accessible route within the boundary of the Oakdale Mall from public transportation stops and/or public streets or sidewalks to an accessible building entrance. The presence of these and other access barriers indicated that the Defendants failed to remove such barriers to access by persons who use wheelchairs as required by the ADA. Discovery is ongoing and the Plaintiff reserves the right to supplement this answer.

Defendant, DeMoulas Supermarkets, Inc., Opposition #57, Exh. I Answer No. 11.

Claiming it to be "overly broad and unduly burdensome", Frotton objected to the interrogatory "[p]lease state each date you visited the property and describe precisely and in full detail how, if applicable, you claim that you were denied equal access to the property due to your alleged disability which you claim was in violation of the ADA." He then nevertheless answered "that he has visited the property on numerous occasions throughout the years and does not recall the date of each visit. Also, see Answer No. 11." (#57, Exh. I Answer No. 16)

Perhaps the most precise answer given to these contention interrogatories was in response to the query "[p]lease 'state the basis' for your claim in your complaint that the Defendants failed to remove barriers to access by persons with mobile disabilities in the store":

> I encountered numerous access barriers for persons with mobile disabilities on the many occasions when I visited

the Market Basket store. For example, the merchandise aisles throughout the Market Basket store were narrow. It is my understanding that they do not meet the required width such that a disabled person in a wheelchair, such as myself, would have a clear path of travel throughout the store. Also, there were no accessible check-out aisles and there were no accessible rest rooms on an accessible route. There were no paths of travel to the restrooms that did not require the use of stairs. The presence of these and other access barriers indicate that the Defendants failed to remove such barriers to access by persons with mobile disabilities at their store as required by the ADA. Discovery is ongoing and the Plaintiff reserves the right to supplement this answer.

Defendant, DeMoulas Supermarkets, Inc., Opposition # 57, Exh. I, Answer No. 12.

The answers provided by O'Beirne to the same interrogatories are identical, or substantially so, to those given by Frotton. (# 57, compare Exh. I with Exh. J)

Parroting legal principles or an expert's conclusions is insufficient to prove a concrete, individualized injury as is required to support standing. At this juncture the evidence proffered by the plaintiffs is much too amorphous and ethereal to show an actual, particularized injury. Moreover, the very generalized nature of the plaintiffs' allegations, affidavits and answers leaves them open to challenge. For example, neither Frotton nor O'Beirne state with any specificity when they have visited the Oakdale Mall and Market Basket therein or how frequently, although both say that they intend to return. While credibility cannot be judged on the papers, the plaintiffs' statements become somewhat suspect when juxtaposed with the affidavit of David McLean, the Operations Manager of DeMoulas, who avers that

"there are at least ten (10) supermarkets in the DeMoulas chain which are closer to, or at least not further away from, the Frotton residence than the DeMoulas supermarket in the Oakdale Mall" and "there are at least twenty (21)(sic) supermarkets in the DeMoulas chain which are closer to, or at least not further away from, the O'Beirne residence than the DeMoulas supermarket in the Oakdale Mall." (# 57, Exh. N ¶¶ 1, 8, 9) Mr. McClean's statements raise an issue as to whether, indeed, the plaintiffs have demonstrated a risk of future harm.

To summarize, on the record now before the Court, O'Beirne has not shown a probability of success in demonstrating that she is a qualified person with a disability under the ADA. Further, even assuming that she is such a qualified person with a disability, neither O'Beirne nor Frotton has proven a likelihood of success on the merits of establishing they have standing to bring this litigation. On the current state of the evidence, the plaintiffs have not shown that they are likely to succeed in proving that they have suffered an "injury in fact" that is actual and particularized or that they run the risk of future harm. The bottom line is that the record needs to be more fully developed and clarified before the issue of standing can be resolved.

## IV. Conclusion and Order

For the reasons stated it is ORDERED that the Plaintiffs' Application For A Preliminary Injunction To Require DeMoulas Supermarkets, Inc. To Male The Oakdale Mall readily Accessible To And Usable By Disabled Individuals (# 59) be, and the same hereby is, DENIED.