**Wanda LORENZO FONT, et al., Plaintiffs,**

v.

**Funeraria San FRANCISCO, et al., Defendants.**

**No. CIV99–2178 (JAF).**

United States District Court, D. Puerto Rico.

March 27, 2003.

---

Roberto O. Maldonado–Nieves, Esq. Franklin D. Roosevelt, San Juan, for Wanda L. Lorenzo–Font, Esperanza Font–Cruz, Migdalia Lorenzo–Font, plaintiffs.

Carlos Martinez–Texidor, Dennis J. Cruz–Perez, Martinez–Texidor & Fuster, Ponce, for Funeraria San Francisco, Benjamin Rosario, defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs Wanda L. Lorenzo Font, Esperanza Font Cruz, and Migdalia Lorenzo Font bring the present action against Defendants Funeraria San Francisco and Benjamín Rosario, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117 (1994 & Supp.2002), and state law. *Docket Document No. 1,27.*[1]

Defendants move to dismiss. *Docket Document No. 26.* Plaintiffs oppose the motion, and proffer a partial summary judgment motion. *Docket Document No. 34.* Defendants oppose the motion for summary judgment. *Docket Document No. 40.*

### I.

### Statement of Facts

Unless otherwise indicated, we derive the following facts from Plaintiffs' amended complaint, *Docket Document No. 27.*

---

1. Plaintiffs voluntarily dismissed original Defendant Greg Brunwasser on March 25, 2002. *Docket Document No. 44.* Esther González– Acevedo, Defendant Rosario's wife, was joined as an indispensable party. *Docket Document No. 19.*

Defendant Benjamín Rosario owns and runs the Funeraria San Francisco ("Funeral Home") in Aguada, Puerto Rico. The Funeral Home is also a Defendant. Esther González–Acevedo is Defendant Rosario's wife. *Docket Document No. 19.*

Plaintiff Esperanza Font Cruz is the mother of Plaintiffs Wanda and Migdalia Lorenzo Font, as well as the deceased, Francisco Lorenzo Font. Plaintiff Wanda Lorenzo Font is a resident of New Jersey. Plaintiff Esperanza Font Cruz lives in Aguada with Plaintiff Migdalia Lorenzo Font, but stayed with Plaintiff Wanda Lorenzo Font in New Jersey while Francisco received medical treatment there. *Docket Document No. 34.* On February 5, 1998, Francisco died in Plaintiff Wanda Lorenzo Font's New Jersey apartment. Francisco had HIV/AIDS. Plaintiffs Wanda Lorenzo Font and Esperanza Font Cruz decided to hold funeral services in their hometown of Aguada. Defendant Funeral Home was to make all the necessary funeral arrangements.

As part of the services contract, Defendant Rosario instructed Plaintiff Wanda Lorenzo Font to contact Greg Brunwasser ("Brunwasser"). Brunwasser agreed to pick up the deceased's body from the New Jersey medical examiner, to embalm the body, and to arrange for its transport to Puerto Rico. None of the Plaintiffs saw the body after the deceased's death in New Jersey.

Plaintiffs traveled to Puerto Rico to prepare for the wake, which was to take place at the Defendant Funeral Home. When the body arrived in Puerto Rico, Defendant Rosario ordered that the body be taken immediately to the cemetery. Defendant Rosario claims that Brunwasser had informed him that the body was infected with a highly infectious disease, either hepatitis or AIDS, and had to be buried immediately due to the high health risks the corpse created. Defendant Rosario also suggested to Plaintiffs that they be tested for hepatitis and the AIDS virus as well.

Plaintiffs were greatly upset by Defendant Rosario's decision, and pleaded with Defendant Rosario to change his mind and allow for a wake with an open casket. Defendant Rosario resisted, but he finally allowed the Plaintiffs to have a closed-casket wake at Plaintiffs' home in Aguada. Plaintiffs claim they were caused great anguish and suffering because they were not able to pay their last respects to their relative in the way Plaintiffs had desired.

Plaintiffs claim that, as of the date of the deceased's death and the date of his burial, there was no scientific or medical evidence, guideline, instruction, rule, or regulation against having a wake for an HIV-positive deceased person with an open casket. Plaintiff Wanda Lorenzo Font also called Francisco's physician in New Jersey to inquire as to whether there would be a health risk from an open-casket wake. *Docket Document No. 34.* The physician responded that there was no reason to require a closed casket. *Id.*

Plaintiffs complained to the Health Department of Puerto Rico, which conducted an investigation and proceeded with the exhumation of the corpse to verify for Plaintiffs that the corpse was that of Francisco Lorenzo Font. Plaintiff Wanda Lorenzo Font was present at the examination to identify the body. The body was in fact that of her brother, Francisco.

On October 22, 1999, Plaintiffs filed a complaint asserting associational discrimination by a public accommodation in violation of Title III of the ADA, which the subsequently amended. *Docket Document 1, 27.* Plaintiffs also seek damages for breach of contractual obligations under Puerto Rico law, 31 L.P.R.A. §§ 3052 and 5141 (1990 & Supp.1998). Plaintiffs claim

to have a contract with Brunwasser, and another with Defendants Rosario and the Funeral Home, to provide funeral services in a dignified manner and in accordance with the Plaintiffs' wishes as to how the service should be undertaken. Plaintiffs assert that these terms were breached by Defendants Brunwasser and Defendants Rosario and the Funeral Home when they gave and followed, respectively, the instructions not to allow an open-casket wake.

Plaintiffs allege that Defendant González–Acevedo, as co-owner of the Funeral Home, is liable for Defendants Rosario and the Funeral Home's negligence and omissions.

Plaintiffs seek declaratory relief, as well as punitive and compensatory damages under the ADA and state law. Each Plaintiff seeks damages in excess of $100,000.

Defendants Rosario and the Funeral Home move to dismiss Plaintiffs' claim for lack of subject-matter jurisdiction. *Docket Document No. 26.* Defendants assert that Plaintiffs do not have standing under ADA's Title III. *Id.* Defendants argue that this section does not include Plaintiffs in its associational discrimination provisions, since the "individual" with the disability had died and, Defendants reason, could no longer have a disability. *Id.* They also assert that Plaintiffs do not have diversity and that their complaint does not meet the amount in controversy requirement. *Id.*

Plaintiffs argue that the ADA should be liberally construed to bring the facts of the underlying case within its scope. *See Docket Document No. 34.* Plaintiffs aver that Congress intended to protect HIV/AIDS patients' relatives from discrimination by including Funeral Homes among those public accommodations subject to the ADA. *Id.*

Plaintiffs submit a motion for partial summary judgment, arguing that this court should find that Defendants breached the contract to provide funeral services for the decedent. *Id.* Defendants maintain that this court should not grant partial summary judgment, averring that there is not enough evidence to show that they breached the funeral contract. *Docket Document No. 40.*

## II.

### A. Standard for Motion to Dismiss under Rule 12(b)(1)

 Under Rule 12(b)(1),a defendant may move to dismiss an action against him for lack of federal subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Since federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of it. *See Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995) (citation omitted). In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998) (citing *Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1 (1st Cir.1987)). Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *See Land v. Dollar,* 330 U.S. 731, 734–35, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996) (citation omitted).

### B. Motion for Summary Judgment Under Rule 56(c)

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for

summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

### III.

### *Analysis*

**A. Americans with Disabilities Act**

#### 1. Background

In 1990, Congress determined that some forty-three million Americans have one or more physical or mental disabilities, and that these individuals continue to be targets of serious and pervasive forms of discrimination. *See* 42 U.S.C. § 12101(a)(1), (2). With this and other findings in mind, Congress enacted the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with

disabilities." *Id.* at § 12101(b)(1). The ADA addresses discrimination against disabled individuals in social arenas including, but not limited to, education, housing, and health services. *Id.* at § 12101(a)(3).

Title III of the ADA specifically prohibits discrimination against disabled persons in the enjoyment of public accommodations. *See* 42 U.S.C. §§ 12181–12189. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such impairment, or being regarded as having such impairment." H.R. REP. No. 101–485, pt. 2 (1990). Defendants do not contest that decedent was "disabled" within the meaning of the ADA prior to his death. *See Hoepfl v. Barlow*, 906 F.Supp. 317, 319 (E.D.Va.1995)(stating that HIV positive status has been considered a disability under the ADA). "Public accommodations" are certain private entities, such as hotels, restaurants, and places of education, that affect interstate commerce. *See* 42 U.S.C. § 12181(7)(A),(B),(J). Funeral Homes are specifically included among the listed public accommodations. *See id.* at § 12181(7)(F).

Under Title III, a place of public accommodations cannot deny a disabled individual or class the opportunity to participate in or benefit from its goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(1)(A)(i).

■ Title III's associational discrimination provision was intended to cover any individual who is discriminated against because he is associated with individuals with disabilities. *Schneider v. County of Will*, 190 F.Supp.2d 1082, 1090 (N.D.Ill.2002).[2] The statute provides that:

[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

42 U.S.C. § 12182(1)(E).

### 2. Standing

■ "Standing is a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 12 (1st Cir.1996)(quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." *U.S. v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir.1992).

■ Courts narrowly interpret their judicial power under Title III because the ADA as a whole limits its remedial provisions to equitable relief. *See* 42 U.S.C. § 12188(a)(1), 42 U.S.C. § 2000a–3(1994 & Supp.2002); *Cf. Blake*, 145 F.Supp.2d at 131 (clarifying that the remedies available under Title III are limited to injunctive relief, restraining orders, or other similar relief). The courts base their restrictive approach on the Constitutional doctrine of standing. *See* U.S. CONST. art. III. Article III mandates that federal courts sit only to decide true "cases or controversies." *See id.* In order to make out a "case or controversy," a plaintiff must demonstrate the existence of three elements: (1) that she has suffered an injury in fact; (2) that her injury was caused by the defendant's conduct; and (3) that her injury is capable of being redressed by a

**2.** *Schneider* was a case under Title II of the ADA, but the court explicitly relied on Title I and Title III's associational discrimination clauses in its analysis.

favorable ruling from the federal court. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ To establish standing under Title III of the ADA, Plaintiffs must show that they are entitled to equitable relief because they are suffering from an injury that is both "real and immediate." *Hoepfl,* 906 F.Supp. at 321; *cf. Am. Postal Workers Union v. Frank,* 968 F.2d 1373, 1374–1375 (1st Cir.1992). Thus, Plaintiffs must show that there is reason to believe that they would directly benefit from the equitable relief sought. *Plumley v. Landmark Chevrolet, Inc.,* 122 F.3d 308, 312 (5th Cir. 1997) (dismissing the Title III claim since the plaintiff, having died, did not face a present or future harm and would not benefit from equitable relief); *see also Hoepfl,* 906 F.Supp. at 321.

■ Consonant with the constitutional doctrine of standing, courts cannot issue injunctive or declaratory relief under the ADA for events that occurred only in the past, even if the past events amounted to a violation of federal law. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (holding that if plaintiff seeks relief on an alleged past wrong, he must show a "real and immediate" threat that he will be wronged again);*see also Hoepfl,* 906 F.Supp. at 321 (holding that nothing in the ADA or its

legislative history suggests an intent to allow individuals to obtain injunctions on the basis of a past injury alone); *see also Frank,* 968 F.2d at 1377 n. 4.

Title III ADA suits are often proscribed for lack of standing. For instance, a number of courts have found that individual plaintiffs with HIV/AIDS lack standing to bring suits regarding their medical care because any medical injury is unlikely to recur. *See, e.g., Jairath v. Dyer,* 154 F.3d 1280, 1283 n. 8 (refusing to extend federal jurisdiction to a patient who was refused treatment by a doctor but had no intention of seeking further medical attention or advice from the doctor); *Atakpa v. Perimeter OB–GYN Assocs., P.C.,* 912 F.Supp. 1566, 1573 (N.D.Ga.1994) (dismissing a woman's claim under the ADA because the woman was unlikely to use the health care provider in the future, and if she did, it was unlikely it would discriminate against her again).

■ Furthermore, courts have found that a deceased person cannot be subject to discrimination in the future.[3] *See Blake v. Southcoast Health Sys.,* 145 F.Supp.2d 126, 134 (D.Mass.2001); *see Plumley,* 122 F.3d at 312. As held by the Supreme Court in *Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675, a plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or

---

**3.** The Ninth Circuit has stated that the term "person", as used in a legal context, defines a living human being and excludes a corpse or human being who has died. *Guyton v. Phillips,* 606 F.2d 248, 250 (9th Cir.1979). Relying on the Supreme Court's decision in *Roe v. Wade,* 410 U.S. 113, 158, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), that a fetus was not a "person" within the meaning of the Fourteenth Amendment, the court held that a corpse is not a "person" within the scope of the Civil Rights Act. *Id.*

The legislative history of the ADA does not indicate that Congress meant to depart from

this general meaning of the word "person" when it used the word "individual" in the statute. See *id.* (referring to the legislative history to divine Congressional intent as to the meaning of "person"). This implication that Congress did not look to expand upon the definition is supported by the fact that Congress limited the ADA's remedies to equitable relief. *See* 42 U.S.C. § 12188(a), 42 U.S.C. § 2000a–3. These provisions require that plaintiffs meet constitutional standing requirements. *See Hoepfl,* 906 F.Supp. at 320.

immediate threat that he will be wronged again. *cf. Frank*, 968 F.2d at 1377 n. 4 (analogizing *Lyons* to claims for declaratory relief). Therefore, courts have found that an ADA claim for direct discrimination under Title III will not survive a plaintiff's death, *see Plumley*, 122 F.3d at 312. Similarly, a decedent's estate does not have standing to bring suit under the ADA. *See Blake*, 145 F.Supp.2d at 134. Despite the broad policy concerns of the ADA, there is no indication that Congress intended to stretch the limits of the standing requirements beyond traditional constitutional doctrine. *See id.*

Our case is distinct in that the Plaintiffs claiming injury here are still alive and are thus at least physically capable of suffering from some challenged discrimination in the future. *See Allen v. Wright*, 468 U.S. 737, 755, 104 S.Ct. 3315, 82.L.Ed.2d 556 (1984) (requiring plaintiffs to show that they personally will be once again subjected to the challenged discrimination). The question then becomes whether a person may sustain an associational discrimination claim once the disabled person that he/she is associated with has died. However, when the disabled person dies, meeting the standing threshold becomes difficult for plaintiffs suing as his associates because it will be difficult to show a threat of immediate and irreparable injury. *See Lyons*, 461 U.S. at 101, 103 S.Ct. 1660 (holding that a plaintiff must show a threat of more than a hypothetical, conjectural, or abstract injury).

 Here, Plaintiffs are suing for past injuries suffered at the hand of Defendant Funeral Home San Francisco and its owners. Plaintiffs' injury was inextricably intertwined with the death of their relative. Their need for Defendants' Funeral Home services arose at the time of the decedent's death, and they incurred any injuries at that time. They do not allege that they are suffering any ongoing discrimination on the part of Defendants, nor suggest that they intend to use Defendants' services again. *See Proctor v. Prince George's Hosp. Center*, 32 F.Supp.2d 830, 832 (D.Md.1998)(dismissing case because plaintiff failed to establish that she faced a real and immediate threat of future harm from Defendant hospital she was unlikely to visit again). While the past injury suffered by Plaintiffs may give them standing for damages, "it is insufficient predicate for equitable relief." *Frank*, 968 F.2d at 1376. As such, Plaintiffs have not met the requirements of standing.

While this is a truly harrowing case, nothing in the ADA or its legislative history suggests an intent to allow individuals to obtain relief without showing a present case or controversy, regardless of the factual circumstances. *See Hoepfl*, 906 F.Supp. at 321; *see also In re Oswego Barge Corp.*, 664 F.2d 327, 339 (2d Cir. 1981) (holding that statutory terms preempting judge-made law are necessary as evidence of Congressional intent). Although the ADA's origins indicate a strong move towards eradicating the many forms of discrimination against disabled Americans, we decline to accept the argument that the statute should be interpreted so broadly as to give Plaintiffs a cause of action for discrimination that occurred after their disabled relative's death. *Cf. Guyton v. Phillips*, 606 F.2d 248, 251 (refusing to read the Civil Rights Act to allow plaintiffs to sue for civil rights transgressions taken against the body of their deceased son). Of course, Plaintiffs may still pursue their state law claims in the appropriate court.[4]

4. *See* 31 L.P.R.A. §§ 3052 and 5141.

Here, Plaintiffs seek monetary damages and legal fees. *Docket Document No. 1.* Those damages may be available to Plaintiffs under Puerto Rico law. However, we may not consider those requests for relief as they are not issuable via a private cause of action under the ADA. *Cf. Blake,* 145 F.Supp.2d at 131 (clarifying that the remedies available under Title III are limited to injunctive relief, restraining orders, or other similar relief).

Plaintiffs also appear to seek declaratory relief. *Docket Document No. 1.* Although declaratory judgment is not explicitly provided for in the ADA, the standing analysis above is equally applicable to Plaintiffs' requests for declaratory relief. *see Frank,* 968 F.2d at 1376–77; *see also Blake,* 145 F.Supp.2d at 137 n. 16 (stating that constitutional standing principles apply with respect to declaratory judgments, which are authorized only "[i]n a case of actual controversy"). Consequently, Plaintiffs do not have standing to pursue a declaratory judgement action under Title III of the ADA.

### B. *Supplemental Jurisdiction*

Plaintiffs also submit a motion for partial summary judgment, asking this court to find that Defendants breached their contract to provide funeral services to decedent. *Docket Document No. 34.* However, we decline to exercise supplemental jurisdiction over Plaintiffs' associated state-law claims against Defendants. *See Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir.1992)(quoting *Cullen v. Mattaliano,* 690 F.Supp. 93 (D.Mass.1988) ("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that the federal cause of action is [dismissed]... the pendent state claims should be dismissed.")).

### IV.

#### *Conclusion*

The ADA is sweeping in its scope and its purpose, but it does not expand upon the legal requirements of standing. As such, Plaintiffs have no viable claim under the association provisions of Title III. Therefore, we **GRANT** Defendants' motion to dismiss Plaintiffs' ADA claims. We also **DISMISS WITHOUT PREJUDICE** Plaintiffs' pendent state law claims for lack of jurisdiction.

**IT IS SO ORDERED.**